James R. Asperger (SBN 83188)
jimasperger@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

Michael B. Carlinsky
michaelcarlinsky@quinnemanuel.com
Maria Ginzburg
mariaginzburg@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION<br><br>AMERICAN INTERNATIONAL GROUP, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>Defendants. | Case No. 11-ML-02265-MRP (MANx)<br><br>Case No. 11-CV-10549-MRP (MANx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 30, 2013 ORDER DISMISSING CERTAIN CLAIMS**<br><br>**[FILED UNDER SEAL]**<br><br>Date: November 20, 2013<br>Time: 1:30 P.M.<br>Courtroom: 12<br>Judge: Hon. Mariana R. Pfaelzer |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT .......................................................................................................... 3

I. THE NEWLY-DISCOVERED EVIDENCE DEMONSTRATES THE UNDERWRITER DEFENDANTS' KNOWLEDGE OF MASSIVE UNCURED UNDERWRITING VIOLATIONS ................................................ 3

II. THE NEWLY-DISCOVERED EVIDENCE DEMONSTRATES ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DEFECTIVE LOANS ......... 5

III. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ........................................................ 7

IV. THERE IS A REASONABLE INFERENCE OF SCIENTER AS TO BOTH UNDERWRITER DEFENDANTS ON ALL SEVEN RMBS ............. 8

V. THE COURT SHOULD CONSIDER THE NEWLY-DISCOVERED EVIDENCE ........................................................................................................ 9

VI. THE COURT ERRED IN APPLYING A HEIGHTENED PLEADING STANDARD ..................................................................................................... 11

CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

## Cases

*Gebhart v. S.E.C.*,
  595 F.3d 1034 (9th Cir. 2010) ...................................................................... 8

*Guido v. L'Oreal, USA, Inc.*,
  2012 WL 2458118 (C.D. Cal. June 25, 2012) ............................................. 10

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
  568 F. Supp. 2d 1152 (C.D. Cal. 2008) ...................................................... 10

*Nandee v. City of Baldwin Park*,
  2004 WL 5472091 (C.D. Cal. Aug. 2, 2004) .............................................. 11

*S.E.C. v. Kovzan*,
  2012 WL 4819011 (D. Kan. Oct. 10, 2012) .............................................. 8–9

*United States v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ................................................................. 10–11

*United States v. Cuesta*,
  2007 WL 2729853 (E.D. Cal. Sept. 19, 2007) .......................................... 7–8

*Vestcom Ltd. v. AMC Am. Music Corp.*,
  2005 WL 6132338 (C.D. Cal. Nov. 21, 2005) ............................................ 11

## Rules / Statutes

C.D. Cal. R. 7-18 ............................................................................................. 10

## PRELIMINARY STATEMENT

AIG's opening brief detailed newly-discovered documents demonstrating the Underwriter Defendants' knowledge of massive underwriting violations in CWALT 2006-26CB and, by extension, the other six RMBS at issue. Specifically, the documents demonstrate Banc of America Securities LLC's ("BAS") knowledge that, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ *See* Declaration of James R. Asperger ("Asperger Decl."), October 15, 2013, Ex. A at 4–11. In sum, █ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ placed BAS on notice of severe unresolved underwriting violations ████████████████████ in the 1,884-loan pool ████████████████████ Yet rather than sound the alarm, review the remaining loans, and halt the closing, BAS buried its head in the sand, conducted no further due diligence, and proceeded with the securitization as planned.

The newly-discovered facts showing BAS's knowledge, taken together with those previously alleged by AIG, warrant this Court's reconsideration of its dismissal with prejudice of AIG's claims against the Underwriter Defendants. This Court's prior decisions acknowledged AIG's allegations that due diligence reports were sent to the Underwriter Defendants, but nonetheless dismissed AIG's claims against the Underwriter Defendants based solely on the Court's view that the SAC's allegations were "insufficient to infer that . . . due diligence reports *regarding Countrywide* would have been known to the Underwriter Defendants." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 2013 WL 5614294, at *8 (C.D. Cal. Sept. 30, 2013) (emphasis added); *see also Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 2013 WL 1881567, at *17 (C.D. Cal. May 6, 2013) ("AIG must plead that Merrill Lynch and BoA Securities knew of malfeasance

1  *at Countrywide*"; for example, that "the expert due diligence firm hired by the
2  Underwriter Defendants reported that the non-conforming loans the firm found were
3  originated by a *Countrywide* entity.") (emphasis added). The newly-discovered
4  evidence provides precisely the evidence that the Court believed was lacking and,
5  taken together with AIG's pre-existing allegations concerning the Underwriter
6  Defendants' due diligence obligations, makes clear that "the Underwriter Defendants
7  knew of the problems at Countrywide." *Id.*

8      Faced with irrefutable evidence that they had knowledge of massive
9  underwriting violations, and the prospect that discovery will reveal additional such
10 evidence, the Underwriter Defendants resort to a hodgepodge of factually
11 incorrect and procedurally improper technical arguments in an attempt to shut the
12 door on AIG's claims. To begin with, they ask the Court to infer, contrary to AIG's
13 allegations and the plain meaning of the newly-discovered documents supplied with
14 AIG's Motion for Reconsideration, that (1) ███████████████████████
15 ███████ (2) ████████████████████████████████████████
16 ██████████████████████ and (3) ████████████████████████
17 ███████████████████████████ These unsupported factual contentions are
18 wrong for the reasons discussed below, and at most create factual disputes not
19 resolvable on this Motion.

20     Equally unavailing are the Underwriter Defendants' additional arguments that
21 (4) the newly-discovered documents are relevant only to the specific underwriter and
22 specific deal discussed above; and (5) this Court may not consider the newly-
23 discovered documents based upon the happenstance of when Countrywide produced
24 them. Finally, (6) the Underwriter Defendants' utter failure to address the pleading
25 standard applicable on their motion to dismiss further confirms that AIG's Motion for
26 Reconsideration should be granted, and the claims against the Underwriter Defendants
27 reinstated.

28

# ARGUMENT

## I. THE NEWLY-DISCOVERED EVIDENCE DEMONSTRATES THE UNDERWRITER DEFENDANTS' KNOWLEDGE OF MASSIVE UNCURED UNDERWRITING VIOLATIONS

The newly-discovered evidence shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In their Opposition, the Underwriter Defendants' primary argument is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That argument is entirely mistaken. The purpose of Clayton's due diligence was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to enable Countrywide and BAS to identify problems in the *wider 1,884-loan pool*. Thus, whether or not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were cured or curable is ultimately irrelevant. The newly-discovered evidence is significant because it demonstrates massive underwriting violations across the entire RMBS and knowledge of those violations by the Underwriter Defendants.

In any event, the Underwriter Defendants' attempts to parse the specific defects ▮▮▮▮▮▮▮▮▮▮ are unavailing:

*First,* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 11–12; Asperger Decl. Ex. A at 8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At minimum, whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a factual question that cannot be addressed on a motion to dismiss. *See Am. Int'l Grp. v. Bank*

*of Am.*, 2013 WL 5614294, at *2 (on a motion to dismiss the "Court must assume the truth of the plaintiffs' allegations and draw all reasonable inferences in the plaintiffs' favor").

*Second*, it is not correct, as the Underwriter Defendants contend, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 11 (emphasis in original). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1]▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Asperger Decl. Ex. E at 43 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Asperger Decl. Ex. J at 149 ▮▮▮▮▮▮ *id.* at 161 ▮▮▮▮▮▮ *id.* at 89 ▮▮▮▮ *id.* at 104 ▮▮▮▮ The Underwriter Defendants' knowledge of these violations confirms their scienter as relevant to this motion. Indeed, these violations are particularly significant because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Third*, it is not correct, as the Underwriter Defendants contend, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 12. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Asperger Decl. Ex. A at 4, 8); ▮▮▮▮▮▮ (Asperger Decl. Ex. E); ▮▮▮▮▮▮ (Asperger Decl. Ex. F); ▮▮▮▮▮ (Asperger Decl. Ex. J).

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3 ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *see* Asperger Decl. Ex. F at 103, ▓▓
7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 103–04. ▓▓▓
9 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 *Id.* at 87–88. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓
14 *id.* Ex. A at 8; *see also id.* Exs. E, F, and J ▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But
18 again, all of this raises factual issues that warrant reconsideration.
19 **II.    THE NEWLY-DISCOVERED EVIDENCE DEMONSTRATES ▓▓**
       ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓**DEFECTIVE LOANS**
20
21     The Underwriter Defendants argue that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---
[2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Asperger Decl. Ex. A
27 
28 at 8. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
           *Id.* Ex. E at 40.

1  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5  ▇▇▇ *Id.* Ex. A at 8 (emphasis added). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

6  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See*

7  *also* AIG's Re-Filed Second Amended Complaint ("SAC") ¶ 336, *Am. Int'l Grp., Inc.*

8  *v. Countrywide Fin. Corp.*, No. 11-cv-10549, ECF No. 303 (C.D. Cal. July 26, 2013)

9  (alleging that Clayton's clients pressured Clayton reviewers to change the grades on

10  Grade 3 loans even without compensating factors). Any dispute on this issue is a

11  factual matter for trial.

12  In response, the Underwriter Defendants point to former Clayton employee

13  Vicki Beal, who they contend testified before the Financial Crisis Inquiry Commission

14  about Clayton overturning loan grades after sellers cured deficiencies in the days

15  before securitizations were finalized. *See* Opp. at 8–9. However, on the very next

16  page of Ms. Beal's testimony, conspicuously omitted from the Underwriter

17  Defendants' brief, she made clear that the banks themselves also overturned loans,

18  stating ***"[s]eparately, a client can waive an exception."*** Declaration of Michael

19  Soloff Ex. 2 at 6 (emphasis added). Moreover, when Ms. Beal testified about sellers

20  curing defects "until a deal 'tie-out' call," the "deal" she was referring to was the

21  purchase of "pools of loans"—not the closing of RMBS. *See id.* at 2 ("our clients use

22  Clayton's due diligence to . . . negotiate better prices on pools of loans they are

23  considering for purchase"). And, in any event, Ms. Beal's testimony was about

24  general practices, and certainly did not purport to discuss ▇▇▇▇▇▇▇▇▇▇▇▇▇

25  ▇▇▇ The Underwriter Defendants do not disclose or provide testimony from the

26  actual individuals who ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ (information

27  that is necessarily in their possession), and their reliance instead on Ms. Beal's *generic*

28  testimony is strikingly at odds with their insistence, in their current brief and prior

1  submissions, on factual allegations tied precisely to the RMBS at issue.[3]  *See* Opp. at
2  8.  Finally, any dispute concerning Ms. Beal's testimony is, at most, an issue for trial.
3  **III.**  ▮
4
5        The Underwriter Defendants argue that because ▮
6  ▮
7  ▮ Opp. at 14.
8  That is wrong.  *First*, the Underwriter Defendants' speculation concerning the nature
9  ▮ is disingenuous. ▮
10 ▮ *See*
11 Asperger Decl. Ex. D at 34 ▮
12 ▮
13 ▮
14 ▮
15 ▮[4]▮
16 ▮
17 ▮ *Second*, the newly-discovered documents themselves
18 suggest that ▮
19 ▮
20 ▮
21 ▮ *See* Asperger Decl. Ex. A at 8–11; Asperger

---

[3]  The Underwriter Defendants' reliance on Ms. Beal's testimony is also at odds with Defendants' October 7, 2012 Motion to Strike in which Defendants demanded that excerpts from Ms. Beal's testimony be stricken from AIG's Complaint.  *See* Defs.' Mot. to Strike at 5 & Ex. B at 10, 13, 14, 16, *Am. Int'l Grp. v. Bank of Am. Corp.*, No. 11-cv-10549, ECF No. 165 (C.D. Cal. Oct. 7, 2012).

[4]  Of course, the Underwriter Defendants know better than anyone whether ▮ ▮ yet they have not stated definitely whether it was or was not.  *Cf. United States v. Cuesta*, 2007 WL 2729853, at *22 (E.D. Cal. Sept. 19, 2007) ("When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him.").

Decl. Ex. F at 76, 97, 52, 58, 79, 94, 103, 106.[5]  At the pleading stage, this Court may not draw inferences against AIG, and any factual dispute concerning whether and to what extent ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ should be left for trial.

## IV. THERE IS A REASONABLE INFERENCE OF SCIENTER AS TO BOTH UNDERWRITER DEFENDANTS ON ALL SEVEN RMBS

The Underwriter Defendants contend that the newly-discovered evidence is limited in relevance to the CWALT 2006-26CB securitization and that it should have no impact on AIG's allegations regarding the other three RMBS underwritten by BAS or the three RMBS unwritten by Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill"). *See* Opp. at 14–15. These arguments, which effectively require AIG to allege, in its Complaint, each specific document that placed each specific Underwriter Defendant on notice of violations in each specific deal, is entirely inconsistent with the applicable pleading standard, which permits scienter to be alleged generally. *See Gebhart v. S.E.C.*, 595 F.3d 1034, 1041 (9th Cir. 2010) ("Scienter can be established by . . . circumstantial evidence.") (internal quotation marks omitted); *see also S.E.C. v. Kovzan*, 2012 WL 4819011, at *4 (D. Kan. Oct. 10, 2012) ("[E]vidence of the practice within the industry may be relevant to the issue of scienter."). Indeed, Defendants' argument is inconsistent even with this Court's decision on Defendants' motion to dismiss, which, far from requiring proof of scienter on each deal and as to each Underwriter Defendant, instead required allegations demonstrating a plausible inference that "due diligence reports regarding Countrywide would have been known to the Underwriter Defendants." *Am. Int'l Grp. v. Bank of Am.*, 2013 WL 5614294, at *8. That is exactly what the newly-discovered evidence shows—particularly when

---

[5] The Underwriter Defendants point out that some of the loans Countrywide securitized in CWALT 2006-26CB "were originated by entities other than Countrywide." Opp. at 13. It is immaterial whether Countrywide "acquired" rather than "originated" these loans because Countrywide agreed to conduct a "quality control review" of all the loans in the CWALT 2006-26CB prospectus supplement. *See* Opp. at 13 ("Countrywide Home Loans may acquire mortgage loans . . . [that are] underwrit[ten] . . . to Countrywide Home Loans' standards. . . .  After purchasing mortgage loans under those circumstances, Countrywide Home Loans conducts a quality control review of a sample of the mortgage loans." (citing CWALT 2006-26CB Prospectus Supplement at S-41)).

considered together with AIG's existing allegations in the SAC that it was the Underwriter Defendants' purpose, function, and obligation to conduct due diligence on the loans they were underwriting.

## V. THE COURT SHOULD CONSIDER THE NEWLY-DISCOVERED EVIDENCE

The Underwriter Defendants contend that the newly-discovered evidence is not properly before this Court because Countrywide produced the documents to AIG eight days before AIG filed its opposition to the Underwriter Defendants' motion to dismiss the SAC. This is unavailing.

Contrary to the Underwriter Defendants' arguments, AIG acted aggressively, and certainly reasonably, to identify the documents attached to its Motion for Reconsideration and bring them to the Court's attention once Countrywide produced them. The documents attached to AIG's Motion had not been produced as of July 26, 2013, when AIG filed its Second Amended Complaint. *See* ECF No. 303. They were produced a month later on August 22, as part of s **50-million page** production that Countrywide delivered on 18 hard drives and nine DVDs. Declaration of Geneva B. McDaniel, Nov. 4, 2013, ¶ 2. Because of the complexities involved in setting up a review of a 50-million page production, AIG did not have working access to the cited documents when it opposed the Defendants' motion to dismiss eight days later, or indeed, until mid-September. *Id.*; ECF No. 328. Once the Court issued its decision—which as explained in AIG's opening brief, was the *first time* that the Court assessed the sufficiency of AIG's claims against the Underwriter Defendants—AIG acted rapidly to prepare and file the instant motion, based in part on the newly-discovered documents. *See Am. Int'l Grp. v. Bank of Am.*, 2013 WL 5614294, at *5 ("Importantly, the May 6, 2013 Order was not premised on meeting the Rule 9(b) pleading standard . . . ."); *see also* ECF No. 359 at 20.

There can thus be no serious dispute that AIG "exercise[d] . . . reasonable diligence" in identifying the materials and bringing them to the Court's attention, as

required by local rule. *See* C.D. Cal. R. 7-18. For example, in *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, the Central District of California court granted reconsideration based on documents that had been produced in discovery, crediting defendants' argument that "they were unable to discover and present [the evidence] to the court previously because it was 'buried in the more than 58,000 documents [that plaintiffs] produced' after briefing was complete." 568 F. Supp. 2d 1152, 1163 (C.D. Cal. 2008) (alterations in original); *see also Guido v. L'Oreal, USA, Inc.*, 2012 WL 2458118, at *2–5 (C.D. Cal. June 25, 2012) (granting reconsideration notwithstanding the argument that defendants had "ample opportunity" to review the new evidence in the three days prior to argument). The same result is warranted here.

More broadly, it would be fundamentally unfair if the Underwriter Defendants were permitted to dodge liability, and clear evidence of scienter, based on technical arguments concerning the pure happenstance of (a) the date on which Countrywide decided to produce the documents disclosing the Underwriter Defendants' scienter; (b) the date by which AIG could access the production; (c) the date on which AIG opposed the motion to dismiss; and (d) the date on which this Court decided the motion to dismiss. That is why, as AIG demonstrated in its opening brief, the Ninth Circuit bars dismissals with prejudice based on a party's purported failure to allege facts that might later be discoverable. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (dismissal with prejudice is inappropriate when a court can "conceive of facts" that would render a complaint viable) (internal quotation marks omitted); *Vestcom Ltd. v. AMC Am. Music Corp.*, 2005 WL 6132338, at *2 (C.D. Cal. Nov. 21, 2005) (dismissing fraudulent conveyance claims "without prejudice to the right of Vestcom to seek amendment if discovery reveals a basis for pleading fraudulent conveyance"); *Nandee v. City of Baldwin Park*, 2004 WL 5472091, at *3 (C.D. Cal. Aug. 2, 2004) (granting plaintiff's request to dismiss a claim without prejudice "so that he can amend the claim if, 'through discovery, sufficient facts are discovered'" because the court could not "conclude that it is not at all possible that

Plaintiff can correct the defects in his complaint"). The newly-discovered evidence demonstrates conclusively that AIG can correct the defects this Court identified in its Complaint, and under clear Ninth Circuit law, AIG is entitled to that opportunity.

## VI. THE COURT ERRED IN APPLYING A HEIGHTENED PLEADING STANDARD

The Underwriter Defendants do not address AIG's contention that the Court assessed the SAC's allegations of scienter pursuant to an improperly heightened pleading standard. *See* AIG Br. at 2–11. Reconsideration is warranted for this reason as well.

## CONCLUSION

The Court should reconsider its order and (a) reinstate AIG's claims against the Underwriter Defendants or (b) dismiss AIG's claims against the Underwriter Defendants *without prejudice* and grant AIG leave to amend its October 10, 2013 Complaint.

DATED: November 4, 2013               RESPECTFULLY SUBMITTED,

By: /s/ James R. Asperger
_____

James R. Asperger (SBN 83188)
jimasperger@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Michael B. Carlinsky
michaelcarlinsky@quinnemanuel.com
Maria Ginzburg
mariaginzburg@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiffs*